White v. Butkowski, Ms. Kovler Good morning, Your Honors. Winona White was a federal detainee with the United States Marshal Service having legal custody over her and Kankakee County having physical custody over her during the period from September 9, 2000, September 11, 2009 to September 30th of that year. She was with them for basically a little over three weeks, except for a 96-hour window where she was in labor and dealing with complications in a local hospital. She was there due to an intergovernmental agreement where Kankakee County, specifically Jerome Combs Detention Center, agreed to house federal detainees and provide reasonable and She filed an action in September of 2011. She filed her complaint for deliberate indifference against medical staff and jail personnel at Kankakee County. An answer was filed by the defendants in November of that same year, 2011, where they pled the remedies. By December of that same year, a discovery order was provided. However, a motion for a payee hearing was only filed in March of 2014. This is despite the fact that there was- What I don't understand, among other things, is it correct that the district court said that she had enough time to submit a grievance. She had 11 days before her delivery and four days after returning from the hospital. Is that what the court said? Yes. Well, what happened after the 11 days? I didn't think there was a deadline for filing grievances. There wasn't, Your Honor. Well, why couldn't she file it later? Your Honor, she had no knowledge of what happened in terms of their basically benign neglect of her and her fetus during the period that she was there. She came in on September 11th. On September 16th, a nurse took basically partial history, her due date, and gave her prenatal vitamins. September 17th, there was a meeting with the medical directors, two physicians, the nursing staff, and the physician's assistant, as well as jail personnel, specifically the chief of operations, Chief Downey. At that time, the doctors clearly stated that this inmate was beyond their scope of care, that she needed to see an OBGYN immediately, and she needed to be transferred from that facility because she needed constant monitoring. Winona White was 37 years of age in her 10th pregnancy. Wait, I'm lost. My question is simple. Why didn't she, if there's no deadline on filing a grievance, why didn't she file a grievance whenever she wanted, whenever she felt better? Your Honor, until discovery started in this case, she had no idea of, until she had knowledge that the child that she... Well, why doesn't she file it now, right? You say there's no deadline. So at some point, she obviously learns that there was a problem, so why doesn't she file a grievance? I don't get it. Your Honor, I believe the statute of limitations for this sort of... Well, first you said there was no deadline for a grievance, now you're talking about statute of limitations. According to the facility's inmate handbook, there is no deadline. Right. Under the statute, I'm unaware of a deadline. My understanding is that deadline is supposed to be imposed by the facility, but nevertheless, the final authority comes from the United States Marshal Service, and that information regarding deadlines or the ability to appeal was never provided to Ms. White. She had no knowledge that she could have filed against the United States Marshal Service because they had the final authority to transfer her, which they did not in this case. The only... Is that by contract? Yes, Your Honor. There's an intergovernmental agreement between... In the contract between the Marshal Service and the local government that says those kind of decisions be made by the Marshal Service? Final authority. Final authority. For an inmate to be transferred, such as in this case where she's pregnant and in her eighth month at high risk, hypertension, previous placenta abruptions where she nearly died in her previous pregnancy, smoke or obese, things of that sort, she would have had to have a clearance by her physician before she would have been able to take a flight. In this case, despite the doctors stating in their meeting that she needed to be transferred immediately, there was nothing done. Basically she sat in her cell until she had labor. There was one sick call request, which she did not go to because it was too early in the morning and she was not feeling well, and that was to a physician's assistance. She was never seen by anyone with obstetrical gynecology training, and in this case it's not that she could have gone to a hospital, an emergency room, you know, before she was in labor. All they would have done would have sent her back. She needed constant monitoring and obstetrical care. Chief Downey said that even though he had been at the meeting, he had called the feds and the feds had refused. He never filed any formal application to have her transferred. So our argument, the second part of our argument is that there was, the grievance process was basically unavailable to her. She had no knowledge of what was going on. No one communicated anything to her regarding... Did she get a handbook? She received a handbook, Your Honor, where there were, and she never, that's one thing, she never ever stated that she filed a grievance. There were, there was a complaint, there was an answer where they pleaded their affirmative defense. There were interrogatories filed. In the interrogatory filed, which is number 28, in January of 2012, she's asked clearly whether she filed a grievance. She stated no. Then they took from that, from that time where the complaint was filed in, in September of 2011 to May of, of 2014 to file a paybee hearing. It begs the question, why were, if the court takes judicial notice of the district court's docket, there were 67 notice of depositions filed in this case. Well, I mean, obviously there's a lot going on. There's the father's case, the child's case, they're being handled together, right? Your Honor, but... And, and this defense is not going to take care of the father's and the child's case. Yes, Your Honor, but, but, but this is, this, unfortunately, these deliberate indifference cases even in, resulting in pregnancies with defects or death are fairly common. This was a very, very simple case in terms of she never said she filed a grievance. They chose, they strategically chose not to file a paybee motion, just simply because in March of, of 2012, John Lipsy filed his complaint as the father on behalf of the child. They had a much more empathetic, sympathetic plaintiff here. And they chose to keep the criminal, unfit mother if they, if they wanted to proceed to a jury trial. That, that was the only explanation I could gather for why they would keep this case for years. Is that your speculation or has that been set on record? Your Honor, we asked the plaintiff's attorney to join for, to, to take, have the trial consolidated and he did not. He wanted to stay away as far from the mother as possible. And I... The, the father's attorney? The, the father's attorney. Right. Okay. We believe that the only reason they would have, and we went to the point of having experts retained in this case and all discovery was concluded. This goes completely against the, the, the intent and history of the Prisoner Reform Litigation Act and particularly against Judge Posner's opinion in paybee, what I'll call paybee number one, and even in the amended version of paybee number two, because they never should have stated why this case was in any way... Did you ever, did you ever ask for a hearing before you, so you could save that expense and effort? No, Your Honor, because by the time I got in, the, the, the second the father had filed his complaint, the cases were consolidated and discovery was continued. Based on... I'm a criminal defense attorney from Ohio. I looked at the opinions regarding paybee hearing and my, my... So which is... My understanding was that they waived that hearing. Okay. Which, where have we held that paybee has been waived, that the failure to exhaust defense has been waived? My argument is that, that it is an affirmative defense, just like the Seventh Circuit has held... It was planned. ...still compliance for, for inmates filing grievances. It also goes to the defendants to, to... That's creative, but have we ever held that? You have stated, Your Honor, that in Abney v. McGinnis, well, not this court, but other circuit courts have held that defendants can forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it. Okay. So it was pled. Okay. I mean, the obvious question under your theory is, when was it waived? It was waived when they went on for two and a half years. When in that two and a half year period? We never... How do we know? We don't... You're asking us to, to create this new waiver rule, as near as I can tell, that, and I don't know what the standards would be, I don't know how we would do that. Your Honor, if you look at the paybee opinions, it's clear they, the, the first opinion says that, that, and gives a, a, basically, a step-by-step analysis of how the district court should handle these cases, and that... And the district court chose not to, for whatever reason. Right. Correct. And, and, and when Winona White's deposition was taken, that, and all of the interrogatories and production of documents were provided, which would have, all of the, the discovery orders were done prior to 2012. Winona White's deposition was taken when I came in, in October of 2013. At that point, they had everything regard, in order to determine whether there was an exhaustion of... Okay. Thank you, Ms. Kovoy. Your time is expiring. Thank you. I'll give you more time and rebuttal. So Mr. Rose? Good morning, Your Honors. This appeal raises two questions. The first... ...on the 11 days. What's that about? Well... I keep saying, you know, well, she had 11 days. For four days, she could walk and talk or something, or at least talk. And therefore, she should have filed a grievance within that period. Why? Your Honor, this goes to the availability of remedies. So the question is, one, is there a grievance process? Yes, there is. Look, just answer my question. Why the 11 days? What was the... Why is that important? She was incarcerated for 11 days before she gave birth to her baby. I know that, but... If she was having... ...the point seems to be that you and the judge think she had to file her grievance within the 11 days. And she was capable of doing it in the four days after the birth because she could talk or something, right? Now, why is that a deadline? I would say the deadline would be as long as she was an inmate. I'm not saying that she had to file within those four days. Well, how long did she remain an inmate? To the September 30th. So I think... You're saying September 30th is the deadline? How long did she remain an inmate after the 11 days? It was another eight days. Another eight days. Yes. Well, so why is there such emphasis on her not filing within the four days when she had another eight days? Your Honor, with all due respect, I don't think that's the deadline, and that's not where my focus is. But why does the judge keep saying... Why is it you say, and the judge said, in those four days, she could have filed a grievance? Well, she could have. But that doesn't matter, right? Because she had another eight days. I'm saying that she could have... No, she had another eight days, right? So there's no magic to those four days. I would agree with that. Well, why do you talk about it then? Your Honor, it's my belief in the brief, she is an inmate. The PLRA requires exhaustion, and she never filed a grievance. Now, we can discuss should she have filed it before she gave birth, after she gave birth, after she left the facility. The point is, in this case, she never filed any grievance. Now, after she left the facility in September 2009, that's six years ago. After she left the facility, you say she could still have filed a grievance? I don't believe that the inmate handbook would provide for that. It's my belief that the inmate handbook provides that grievances are to be filed by inmates, and she was no longer an inmate. Now, if she had filed within a week or two weeks, we might discuss whether there is an implied or a reasonable time limit that we want to put on that, but that would be a different case. Well, OK, let's talk about... We heard from this court earlier this year called King v. McCarty that also dealt with an inmate who had been transferred. And the question was whether, after the transfer, that inmate could have had an available grievance procedure. It sounds like you're telling us if you're no longer an inmate at the Kankakee County Jail, it's not available to you. Is that right? That would be my first argument. Well, if that's your first argument, then I think you lose. And I think you lose the whole case, at least the whole defense, because she's only in there a few days after having given birth, before she's transferred. The idea that she had to file that quickly, it seems to me, is just preposterous. Your Honor, if I could say, this case is about her seeking prior or sufficient obstetrical care. So the time to do that, the time to raise that is when she's pregnant. Yes, I'm not feeling good. Yes, I want to be transferred. Yes, I want to be taken to the hospital. Yes, I want to see an obstetrician. So when's the time limit under the policy that she was given? To answer your question, there's nothing in the inmate handbook that has an explicit deadline. I would say that the ---- Did she know she was going to be transferred on the 30th? I'm not sure. Is there any evidence that she did? I don't know what she was told in advance of being transferred. Well, okay, because the position you seem to be taking now is she could file anytime she's an inmate at Kankakee, right? Well, that's when it would have had some ---- That's correct, right? Filing a grievance would have led to something. Yes, what you're saying, I believe the answer to my question is yes, she could file anytime she's at Kankakee. Absolutely. Okay. And after she's gone, she cannot? The inmate handbook talks about grievances being filed, and it specifies that grievances are to be filed by inmates. And you infer from that that after she's gone, there's no grievance procedure available to her. That's what I would infer. Okay. I said that would be my primary position. I think you could also ---- Does that make any sense? To say that grievances are to be filed by inmates while they're in ---- Because then if they don't want a grievance, they just let her go a few days. It makes perfect sense, but it means that there's no defense under the PLRA. Well, I ---- If it's not available to her. Well, it was available to her because let's talk about availability. My question is to the court would be, what is preventing the inmate from filing a grievance at any time prior to the 30th? My other thing, she doesn't know there's a deadline. She doesn't know that her transfer is imminent. And she's trying to recover from a fairly traumatic birth. Okay, but what we're talking about here, what is she seeking? What would be the ---- Unless we're going to say that this case, there's just no way to file a grievance. In this case, she wants more obstetrical care. She wants to see a doctor. She wants to go to a hospital. So it's my belief that it's incumbent upon her to file a grievance so that the jail officials are actually in a position to do something for her. She can put in a grievance. Here's how I'm ---- You have to file a grievance even if the only remedy available is retrospective, right? Correct. I mean, whether there's a meaningful remedy really doesn't matter, does it? Correct. Okay. And in the briefs, we kind of go down a road where we talk about futility, and hopefully it's clear in the briefs that her futility argument just doesn't fly because it's not about whether she can get monetary damages or anything like that. The question is, she has to put it, file a grievance with jail officials. That's what's required under the inmate handbook. And again, there's no dispute that there was a grievance process, and there's no dispute that she's never filed a grievance. So if we're not going to apply ---- The question is whether the grievance procedure was available to her. That's the statutory term. Let me ask, is there any time limit for processing grievances? I believe that there is a seven-day appeal period. It's in the record, but I don't want to misspeak. For an initial. But in terms of somebody who's got to exhaust, how long can that process last under the jail's policies? I don't recall. I don't want to tell you I recall. It's in the record? I believe that the whole inmate handbook is in the record, and that provides exactly how those are going to be handled. We've also filed, it's also part of the record, is Kankakee County's policy and procedures. So we also, and that lays it out as well. What's the role of the marshal service in all this? Well, this was a federal inmate, and she was transferred. I understand that. That's why she was there. But what counsel for your opposing counsel said, they had some role in making some of these determinations. Well, they would have some say in terms of transfers, for example. Can an inmate be transferred to a different facility? And they had some involvement in terms of where she would be transferred, and that is actually an issue in the second case, the Lipsey case, which has been filed on behalf of. So the federal government and marshal service is a litigant? Correct. And that actually goes to the waiver argument. Plaintiff is saying, well, we sat on our rights. We didn't sit on our rights on this case. First of all, we filed an affirmative defense early in the case. Now, if plaintiff wanted to concede that they had not exhausted their remedies, they could have done several things. They could have dismissed the case. They could have tried to file a grievance even after transfer. They could have done a host of things. They didn't do that. Mr. Rose, I've got to say, though, I have some doubts about the legal viability of plaintiff's arguments about waiver. I really do wonder. Waiting more than two years to seek that hearing seems to undermine the whole purpose. Your Honor, there was no question with the filing of the second case, and there's a long and tortured procedural history with respect to the second case. The two cases were consolidated. There were motions to dismiss that were filed. So there was no question that all of these people were going to have to be deposed. And the fact of the matter is Plaintiff Winona White and Chief Downey were not deposed until late in 2013. Why did you wait until you had taken her deposition before filing the motion? Well, because we wanted to know exactly what the plaintiff's position was with respect to that issue before going for a paving hearing. And so it made sense from a defense standpoint, since we were going to have to take these depositions anyway, and discovery was consolidated. There's no intentional delay here. There's no bad faith litigation. If anything, the PLRRA puts the onus on the plaintiff. It's the plaintiff's responsibility. It's the plaintiff inmate's responsibility to follow and to file a grievance. And the plaintiff also could have moved for a paving hearing. There's nothing in paving which dictates which side has to move for a paving hearing. Okay. Thank you, Mr. Rose. Thank you. Mr. Hoover, do you have anything for me? Just a few points, Your Honor. First of all, the United States Marshals Service was not a defendant in our case. It was in the companion case where the father and child filed a grievance. That's what he's making. Yeah. Second of all, I believe it's 14 days for the grievance procedure, Your Honor. To exhaust, though? I mean, every step? No, for them to respond. No, just for them to respond. For an initial response. Exactly. Seven to 14 days, if I remember correctly. Thirdly, this, again, the complaint was filed in September of 2011, and answer was filed in November. By December of that year, there was a discovery order. By January of that year, Plaintiff's Counsel had submitted interrogatories, which Ms. White timely answered. Ms. Hoover, can I just take you away from the waiver argument for a moment? Was there any indication, any evidence in the record that the plaintiff knew when she was going to be leaving Kankakee Jail? That was going to be my next point. No, Your Honor. That is completely in the realm of the province of the United States Marshals Service. Without warning. Exactly. Without warning, obviously. What is this companion case? It is where the father, on behalf of the child who was born with severe and permanent birth defects, is filed. Basically a malpractice case. So this is a mother's case, and then we have a father's case in which the Marshals Service is involved. Exactly. Exactly. Because the Marshals Service has finally complete authority, rather than Kankakee. She's only housed there. But they have to provide reasonable medical and necessary care under the dictates of the United States. If there's any other questions, I'm here to answer them. Okay. Thank you very much, Ms. Hoover.